## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DH, et al., | |
| Plaintiffs | CIVIL ACTION NO. 3:24-CV-334 |
| v. | (MEHALCHICK, J.) |
| SCRANTON SCHOOL DISTRICT, et al., | |
| Defendants. | |

## MEMORANDUM

Before the Court is a motion to dismiss filed by Defendants Scranton School District ("the District"), Teacher Erica Stolan ("Stolan"), Principal of South Scranton Intermediate School Daniel Gilroy ("Gilroy"), Vice Principal of South Scranton Intermediate School Joseph Lalli ("Lalli"), and Director of Special Education Services Ann Genett ("Genett") (collectively, with Stolan, Gilroy, and Lalli, "Individual Defendants") (Individual Defendants collectively with the School District, "Defendants") on April 26, 2024. (Doc. 7). On February 27, 2024, Plaintiffs Courtny Roberts ("Roberts"), Matthew Hartzell ("Hartzell"), as parents and natural guardians of D.H. (collectively, "Plaintiffs"), initiated this action by filing a complaint pursuant to the Americans with Disabilities Act ("ADA"), the Individuals with Disabilities Education Act ("IDEA"), 42 U.S.C. § 1983, the Fourteenth Amendment, Section 504 of the Rehabilitation Act ("RA"), and various state law claims. (Doc. 1). For the following reasons, Defendants' motion to dismiss shall be **DENIED in part** and **GRANTED in part**. (Doc. 7).

## I.    BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the complaint (Doc. 1). On February 27, 2024, Plaintiffs filed the complaint against Defendants. (Doc. 1). In the complaint, Plaintiffs

allege that D.H. is a thirteen-year-old disabled child with special needs who has been diagnosed with autism, disruptive behavior disorder, attention deficit hyperactivity disorder (ADHD), emotional disturbance, speech and language impairment, and a secondary other health impairment (OHI). (Doc. 1, ¶ 8). D.H. began attending South Scranton Intermediate School within the District during the 2021-2022 school year as a fifth grader. (Doc. 1, ¶ 20). D.H. was placed in a special education classroom with Stolan as his teacher, where he was meant to receive special education services as provided by the IDEA. (Doc. 1, ¶¶ 2, 10, 20).

The events giving rise to this action are as follows: Plaintiffs allege that between August 2021 and January 2023, various District personnel and employees of outside agencies employed by the District witnessed Stolan's abusive conduct towards D.H. and other special education students in her class. (Doc. 1, ¶ 22). During this time period, D.H.'s mother repeatedly spoke to Gilroy and Lalli to complain about the abusive behavior of Stolan and request that D.H. be removed from her classroom due to Stolan's behavior. (Doc. 1, ¶ 23). D.H.'s mother also spoke with Stolan, who stated that she was not equipped for her job. (Doc. 1, ¶ 24). On December 6, 2022, D.H.'s mother attended an Individualized Education Plan ("IEP") meeting and again "pleaded with those in attendance," which included Stolan, Gilroy, and Genett, to move D.H. out of Stolan's classroom "due to Stolan's abusive behavior in the past." (Doc. 1, ¶ 26). Despite these conversations and the December 6, 2022 IEP meeting request, the District did not remove D.H. from Stolan's classroom until January 4, 2023, after two particularly abusive episodes that occurred on January 2, 2023 and January 3, 2023. (Doc. 1, ¶ 25).

On January 2, 2023, D.H. was sitting in a chair in his class in Stolan's special education classroom when Stolan began intentionally spraying a liquid foreign substance into

D.H.'s face. (Doc. 1, ¶ 28). This occurred in front of D.H.'s behavior support professional, Ciara Fulton ("Fulton"). (Doc. 1, ¶ 28). As Stolan sprayed the liquid substance into D.H.'s face, she stated ". . .This should wake him up" and ". . .This worked before in waking him up," implying that she had done this before. (Doc. 1, ¶¶ 28-29). The following day, on January 3, 2023, Stolan approached the seat where D.H. was sitting in a chair with other special education students and "intentionally shoved him with her body out of his chair causing him to fall to the floor." (Doc. 1, ¶ 32). After D.H. fell, Stolan began "directing and encouraging other special education students in her classroom to forcibly remove [D.H.] from the classroom and, in the process, directing and allowing the classmates of [D.H.] to forcibly strike and hit him as he was dragged feet first out of the classroom." (Doc. 1, ¶ 32). D.H.'s mother learned about the incident from Fulton, and when she asked to speak with Gilroy, he refused. (Doc. 1, ¶ 42). Plaintiffs contend that this type of behavior by Stolan directed at D.H. and other special education students was "open, widespread and known by the staff and administrators of the [] District as well as the staff and administrators of other outside agencies serving students within the [] District." (Doc. 1, ¶¶ 33-34). Plaintiffs allege a number of abusive behaviors that Stolen engaged in, including but not limited to "using abusive language," "yelling and screaming in [D.H.'s] face with the intent of initiating inappropriate behavior from [D.H.]," "spraying liquid solution into [D.H.'s] face," "pushing [D.H.] out of his classroom chair," "allowing other students to strike [D.H.]," "aggressively grabbing the desk of [D.H.]," and "placing a shield/curtain up and around [D.H.]." (Doc. 1, ¶ 35).

Fulton ultimately reported Stolan's behavior to the District and provided a handwritten note to Gilroy detailing the incident. (Doc. 1, ¶ 36). On January 4, 2023, a Child Line Report that originated from the District reported two incidents of assaults on D.H. and

identified Stolan as "becoming more aggressive with the children." (Doc. 1, ¶¶ 37-38). That day, the District removed Stolan from D.H.'s classroom. (Doc. 1, ¶ 39). On January 13, 2023, a Report of Suspected Child Abuse was made to law enforcement, and the Scranton Police Department initiated an investigation. (Doc. 1, ¶ 40). According to the complaint, the District provided no communication, outreach, or support to Plaintiffs or other special education students or parents/guardians, and instead allowed Stolan to return to work at South Scranton Intermediate School in the Spring of 2023. (Doc. 1, ¶ 41). After these incidents, Gilroy was removed from his position as Principal at South Scranton Intermediate School and was placed in another administrative position with the District. (Doc. 1, ¶ 43). Lalli remains Vice-Principal, Genett remains Director of Special Education, and Stolan remains a special education teacher at Charles Sumner School in the District. (Doc. 1, ¶¶ 44-46). Plaintiffs contend that the District had a policy or custom of ignoring signs of abuse, failing to investigate inappropriate conduct by teachers, discouraging reporting abuse, and retaliating against those who did. (Doc. 1, ¶ 49). Plaintiffs aver that the District thus acted with deliberate indifference towards D.H.'s disability. (Doc. 1, ¶ 47). As a result, Plaintiffs contend that D.H. was injured. (Doc. 1, ¶ 31).

Plaintiffs' complaint raises thirteen state and federal claims related to alleged constitutional violations by Defendants: (1) Count I – 42 U.S.C. § 1983, Violation of IDEA, 20 U.S.C. § 1440, *et seq.*, and the Fourteenth Amendment against all Defendants; (2) Count II – 42 U.S.C. § 1983, Violation of Fourteenth Amendment against all Defendants; (3) Count III – Violation of IDEA, 20 U.S.C. § 1440, *et seq.*, against all Defendants; (4) Count IV – Violation of ADA against the District; (5) Count V – Violation of Section 504 of the RA against the District; (6) Count VI – *Monell* claim for failure to train/supervise under 42 U.S.C.

§ 1983 against the District; (7) Count VII – Vicarious Liability against all Defendants; (8) Count VIII – Assault and Battery against Stolan; (9) Count IX – Intentional Infliction of Emotional Distress ("IIED") against Stolan; (10) Count X – Breach of Fiduciary Duty against Stolan; (11) Count XI – Negligence against all Defendants; (12) Count XII – Punitive Damages against all Defendants; (13) Count XIII – Demand for Attorney's Fees.[1] (Doc. 1, at 18-50). As relief, Plaintiffs request compensatory and punitive damages, as well as attorney's fees. (Doc. 1, at 50-51).

On April 26, 2024, Defendants filed the instant motion to dismiss, and on May 10, 2024, they filed a brief in support. (Doc. 7; Doc. 8). Plaintiffs filed a brief in opposition on May 23, 2024. (Doc. 9). No reply brief was timely filed. Accordingly, the motion to dismiss has been fully briefed and is ripe for disposition. (Doc. 7; Doc. 8; Doc. 9).

## II.    LEGAL STANDARDS

### A.    12(B)(1) MOTION TO DISMISS

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When a party moves to dismiss under more than one Rule 12 ground, the Court must first consider the Rule 12(b)(1) challenge, 'because if it must dismiss the complaint for lack of subject matter

---

[1] Defendants argue that Count XIII of the complaint, titled "Demand for Attorney's Fees" should be dismissed, as claims for attorney's fees "do not constitute independence [sic] causes of action." (Doc. 1, ¶¶ 168-171; Doc. 8, at 14). 42 U.S.C. § 1988 governs attorney's fees awards. Section 1988 does not confer an independent cause of action but rather authorizes the award of attorney's fees to a prevailing party in cases brought under sections 1981, 1983, and 1985. *See Carpenter v. Ashby*, 351 F. App'x 684, 687 (3d Cir. 2009). Thus, such a demand for attorney's fees must not be asserted as an individual cause of action, but instead as a demand for relief. Defendants' motion to dismiss Count XIII is thus **GRANTED**. (Doc. 7). Count XIII is **DISMISSED**. (Doc. 1). Plaintiffs may include their demand for attorney's fees outside of an independent count in the complaint.

jurisdiction, all other defenses and objections become moot.'" *A.D. v. Haddon Heights Bd. of Educ.*, 90 F.Supp.3d 326, 334 (D.N.J. 2015), *aff'd*, 833 F.3d 389 (3d Cir. 2016) (citation omitted). "A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." *Vieth v. Pennsylvania*, 188 F. Supp. 2d 532, 537 (M.D. Pa. 2002). The failure to exhaust administrative remedies is a jurisdictional issue and the appropriate device to raise this issue is a motion to dismiss under Rule 12(b)(1). *See Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014). A Rule 12(b)(1) dismissal is not a judgment on the merits, but only a determination that the court lacks the authority to hear the case. *Swope v. Central York Sch. Dist.*, 796 F. Supp. 2d 592, 599 (M.D. Pa. 2011).

Rule 12(b)(1) challenges may be "facial" or "factual." *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges whether jurisdiction has been properly pled and requires the court to "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891.) Conversely, when a defendant sets forth a factual attack on subject-matter jurisdiction, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case ... 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).

In this case, Defendants challenge Plaintiffs' alleged failure to exhaust administrative remedies and, thus, present a factual attack on subject-matter jurisdiction. *See Rohrbaugh by &*

*through Rohrbaugh v. Lincoln Intermediate Unit*, 255 F.Supp.3d 589, 592 (M.D. Pa. 2017). As a result, the Court will weigh the allegations in the complaint without presuming truthfulness in order to determine the merits of the jurisdictional claim.

      B.      12(B)(6) MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

C.    42 U.S.C. SECTION 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

8

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.  DISCUSSION

Defendants move to dismiss the claims raised in Plaintiffs' complaint pursuant to Rule 12(b)(1) and (6). (Doc. 7; Doc. 8). Specifically, Defendants argue that (1) the Court lacks subject-matter jurisdiction over Counts I and III; (2) Plaintiffs fail to state a claim under the ADA or RA in Counts IV and V; (3) Plaintiffs fail to establish *Monell* liability under 42 U.S.C. § 1983 in Counts I and VI; (4) Counts VII, VIII, IX, X, and XI are barred by the Political Subdivision Tort Claims Act; (5) Plaintiffs are not entitled to punitive damages; and (6) Individual Defendants are shielded by the doctrine of qualified immunity. (Doc. 8).

### A.  SUBJECT MATTER JURISDICTION OVER COUNTS I AND III

In Counts I and III of the complaint, Plaintiffs allege a claim for "Violation of Civil Rights" under 42 U.S.C. § 1983 and the IDEA and "Individuals With Disability Education Act 20 U.S.C. § 1400 et. seq." respectively. (Doc. 1, ¶¶ 50-69, 77-70). The parties do not dispute that Plaintiffs failed to exhaust their administrative remedies under the IDEA for Counts I and III of the complaint. According to Section 1415, "[B]efore the filing of a civil

action under [other] laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]." Defendants argue that "[b]ecause Plaintiffs failed to exhaust their administrative remedies available for a failure to provide a free appropriate public education ("FAPE") under the IDEA, this Court lacks subject matter jurisdiction for Counts I and III." (Doc. 8, at 5). In response, Plaintiffs contend that they were not required to exhaust administrative remedies under the IDEA because "the gravamen of the complaint involves claims that the plaintiff does not relate to plaintiff student's FAPE," and further because the complaint seeks damages, which are not available under the IDEA, and as such, "recourse to the IDEA's administrative remedies is effectively futile." (Doc. 9, at 6-8).

The IDEA, 20 U.S.C. § 1400 *et seq.*, ensures that all children with disabilities receive a FAPE. Section 1415(l) of the IDEA provides that "[n]othing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], Title V of the Rehabilitation Act, or other Federal laws." 20 U.S.C. § 1415(l). However, Section 1415(l) also requires plaintiffs to first exhaust the IDEA's administrative procedures before suing under the ADA or Section 504. 20 U.S.C. § 1415(l).

In the seminal case *Fry v. Napolean Community Schools*, the Supreme Court stated that "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee—what the [IDEA] calls a 'free appropriate public education.'" 580 U.S. 154 (2017). The Third Circuit has interpreted "gravamen" to mean that "a court must review both the entire complaint and each claim to determine if the plaintiff seeks relief for the denial of a FAPE." *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 133 (3d Cir. 2017) (dismissing case for lack of subject-matter jurisdiction because the student's claims

10

were subject to exhaustion). Whether a complaint uses particular terms or labels, such as FAPE or IEP, is not material. *Fry*, 580 U.S. at 169. Rather, Section 1415(l) "requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Fry*, 580 U.S. at 169.

The Supreme Court provided two instructive hypothetical questions to guide the inquiry into whether the gravamen of the complaint concerns the denial of a FAPE or a disability-based discrimination claim:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or child in some other) has a viable claim.

*Fry*, 580 U.S. at 176.

The Supreme Court illustrated a situation that is instructive in this case: a teacher, "acting out of animus or frustration, strikes a student with a disability." *Fry*, 580 U.S. at 176 n.9. While a lawsuit under a statute other than the IDEA could relate to the student's education, "the substance of the plaintiff's claim is unlikely to involve the adequacy of special education— and thus is unlikely to require exhaustion." *Fry*, 580 U.S. at 176 n.9. In that situation, a child or adult could file the same type of suit if the action took place in a different public facility. *Fry*, 580 U.S. at 176 n.9.

In this case, Counts I and III of the complaint assert that Defendants' failure to provide accommodations tailored to D.H.'s needs, such as a proper behavior management plan,

violated the Fourteenth Amendment and the IDEA.[2] (Doc. 1, at 18-22, 24). Thus, Counts I and III "comprise [of claims] that [seek] relief under the IDEA, as opposed to the sort of claim[s] that a student could bring against a public facility that was not a school or that a nonstudent could bring for alleged wrongs in a school setting." *S.D. by A.D. v. Haddon Heights Bd. of Educ.*, 722 F. App'x 119, 126 (3d Cir. 2018) (finding exhaustion is required in cases where the substance of plaintiffs' discrimination claims concerns the denial of a FAPE to students and where Defendants allegedly failed to provide instruction tailored to meet student's special needs resulting from his disability); *see also Doe v. Austin*, No. CV 23-3287, 2024 WL 871336 (E.D. Pa. Feb. 29, 2024) (explaining that that under Third Circuit precedent, individuals cannot subvert the demands of the IDEA by bringing related claims under different statutes). Here, Plaintiffs would be unable to bring the claims asserted in Count I and Count III against a non-educational public facility because such facility would not be obligated to provide D.H. with the education-related accommodations he seeks. Thus, for the claims asserted in Counts I and III, Plaintiffs are subject to the IDEA's exhaustion requirement. *See Wellman*, 877 F.3d at 133.

Nevertheless, Plaintiffs argue that if the Court finds that the IDEA exhaustion requirements do apply, an exception should be applied because exhaustion would be futile in this case. (Doc. 9, at 7). The Third Circuit found a party may be exempt from the IDEA's exhaustion requirement where "exhaustion would be futile or inadequate." *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 275 (3d Cir. 2014) (citing *Komninos*, 13 F.3d at 778).

---

[2] In Counts II, IV, and V, Plaintiffs also make allegations regarding Defendants' failure to provide D.H. and other special needs students with a FAPE, potentially implicating exhaustion requirements. (Doc. 1, at 18-30). Because Defendants do not move to dismiss Counts II, IV, and V on the basis of exhaustion, the Court will only analyze Counts I and III in this section. (Doc. 8, at 5-6).

Exhaustion is understood to be futile when a plaintiff "'allege[s] systemic legal deficiencies and, correspondingly, request[s] system-wide relief that cannot be provided (or even addressed) through the administrative process.'" *D.A. v. Pleasantville Sch. Dist.*, No. 07-CV-4341, 2009 WL 972605, at *5 (D.N.J. Apr. 6, 2009) (quoting *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 89 (3d Cir. 1996)). In determining that the exhaustion requirement is futile, courts must consider whether enforcing the exhaustion requirement would serve the requirement's purpose, namely "developing the record for review on appeal, encouraging parents and the local school district to work together . . . , and allowing the education agencies to apply their expertise and correct their own errors." *Batchelor*, 759 F.3d at 275 (internal citations omitted).

Despite Plaintiffs' assertions otherwise, the fact that they seek compensatory and punitive damages -- which are not available under the IDEA -- for IDEA-related claims does not permit Plaintiffs to circumvent administrative exhaustion requirements and is not a basis for deeming exhaustion futile. In an unreported case addressing this exact argument, the Third Circuit has explained:

> [T]he inability of a hearing officer to award monetary damages does not render the administrative process futile. We realize, of course, that a claimant may avoid the IDEA's exhaustion requirement when "exhaustion would be futile or inadequate." However, we have held that the mere inclusion of monetary damages in a claim for relief does not necessarily establish the futility that would avoid the IDEA's exhaustion requirement. Moreover, a contrary holding would allow any plaintiff seeking relief pursuant to the IDEA to avoid the statute's exhaustion requirement merely by adding a claim for monetary relief, thus creating an exception that would eliminate the exhaustion rule.
>
> *F. S. by & through Scarano v. Crestwood Sch. Dist.*, No. 20-3321, 2021 WL 6101356, at *3 (3d Cir. Dec. 21, 2021) (citations omitted).

This considered, the Court finds that Plaintiffs' inclusion of a claim for damages does not render exhaustion "futile" in this case such that they are absolved from the demands of Section 1415. Count I and III will therefore be **DISMISSED without prejudice** on the basis

of exhaustion. (Doc. 1, ¶¶ 50-69, 77-79).

    B.    F<small>AILURE TO</small> S<small>TATE A</small> C<small>LAIM</small> U<small>NDER THE</small> ADA <small>OR</small> RA <small>FOR</small> C<small>OUNT</small> IV <small>AND</small> V

In Count IV and V of the complaint, Plaintiffs allege violations of ADA and Section 504 of the RA. (Doc. 1, ¶¶ 80-104). Defendants next argue these claims must be dismissed for failure to state a claim "[b]ecause Plaintiffs fail to establish that Student's disability was the cause of the denial of benefits[.]" (Doc. 8, at 7). According to Defendants, Plaintiffs' claims provide "no support that the denial of services is directly related to [D.H.'s] disability" because allegations that Defendants failed to provide him with an appropriate placement and education services "function as a standard IDEA violation – not an ADA or Section 504 violation."[3] (Doc. 8, at 8-9). Plaintiffs do not directly respond to Defendants' ADA and RA arguments in their brief in opposition. (Doc. 9).

The ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by

---

[3] As a preliminary matter, Defendants' argument that Plaintiffs' ADA and RA claims function as IDEA claims because they deal with FAPE violations is unfounded. It is well-established that plaintiffs may bring ADA and RA suits based upon a denial of FAPE. Courts have acknowledged that FAPE requirements under the ADA and RA are identical to those under the IDEA. *See P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009) (Section 504 "protects the rights of disabled children by prohibiting discrimination against students on the basis of disability, and it has child find, evaluation, and FAPE requirements, like the IDEA."); *see also Gwendolynne, S. Through Judy S. v. W. Chester Area Sch. Dist.*, No. 19-CV-3844-JMY, 2021 WL 949483, at *2 (E.D. Pa. Mar. 12, 2021) ("under Section 504, recipients of federal funds must 'provide a [FAPE] to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap.'"), *aff'd sub nom. G. S. through Judy S. v. W. Chester Area Sch. Dist.*, No. 21-1680, 2022 WL 2233909 (3d Cir. June 22, 2022) (quoting 34 C.F.R. § 104.33(a)). FAPE requirements under Section 504 and the ADA are materially the same as those under the IDEA, while not superfluous of one another. *See Richard S. v. Wissahickon Sch. Dist.*, 334 F. App'x 508, 509 n.1 (3d Cir. 2009) ("Appellants' § 504 and IDEA claims are factually indistinguishable, and the resolution of the IDEA claim is therefore also dispositive of the § 504 claim.").

14

any such entity." 42 U.S.C. § 12132. Section 504 of the RA similarly states that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "The 'substantive standards for determining liability [under the ADA and Rehabilitation Act] are the same.'" *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) (quoting *McDonald v. Pa. Dep't of Pub. Welfare, Polk Ct*r., 62 F.3d 92, 95 (3d Cir. 1995)). Thus, the Court "address[es] both claims in the same breath." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009); *see also Strickland v. Delaware Cty.*, No. CV 21-4141, 2022 WL 1157485, at *2 (E.D. Pa. Apr. 19, 2022). Additionally, a plaintiff can advance a discriminatory theory under the ADA or RA based on a failure to accommodate. *See McPherson v. Cty. of Dauphin*, No. 1:19-CV-01865, 2020 WL 1558206, at *2 (M.D. Pa. Mar. 24, 2020) (citing *Muhammad v. Court of Common Pleas*, 483 Fed. Appx. 759, 763 (3d Cir. 2012)).

To state a claim under either the ADA or the RA, Plaintiffs must allege that D.H. was a qualified individual with a disability who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability. *Furgess v. Pennsylvania Department of Corrections*, 933 F.3d 285, 288–89 (3d Cir. 2019); *see also Haas v. Wyoming Valley Health Care Sys.*, 553 F. Supp. 2d 390, 396 (M.D. Pa. 2008) (quotations omitted); *see also Pierce v. Pitkins*, 520 F. App'x 64, 67 (3d Cir. 2013). In the specific context of special education ADA and RA claims, Plaintiffs must allege that "'(1) [D.H.] is disabled as defined by the [RA]; (2) [D.H.] is otherwise qualified to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) [D.H.] was

15

excluded from participation in, denied the benefits of, or subject to discrimination at, the school.'" *A.C. v. Scranton Sch. Dist.*, 191 F. Supp. 3d 375, 388–89 (M.D. Pa. 2016) (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir.1999) (citing *W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir.1995), *abrogated on other grounds by A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 803–04 (3d Cir.2007))). Under § 504, Plaintiffs must also plead "'that the school district knew or should have reasonably known of the plaintiff's disability.'" *A.C.*, 191 F. Supp. 3d at 389 (quoting *Coleman*, 983 F. Supp. 2d at 568). Similarly, for compensatory monetary damages under either the ADA or the RA, Plaintiffs must allege deliberate indifference, or "(1) knowledge that a federally protected right is substantially likely to be violated…, and (2) failure to act despite that knowledge." *A.C.*, 191 F. Supp. 3d at 389; *see also S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir.2013) ("a showing of deliberate indifference may satisfy a claim for compensatory damages under § 504 of the RA [and the ADA].").

Despite Defendants' averments otherwise, the Court finds that Plaintiffs properly plead their claims under the ADA and Section 504 of the RA. Plaintiffs allege that "because of [D.H.'s] disabilities," the District "fail[ed] to provide him with the same protections and opportunities that other students were provided" and more specifically that "[d]ue to his disabilities and need for special education instruction, the [] District failed to provide [D.H.] with any education that was required by the IDEA, and [his] IEP and thus discriminated against him due to his disabilities, as non-disabled students were not left to languish with no educational benefit." (Doc. 1, ¶¶ 87, 92). Plaintiffs additionally allege that the District "was aware that as a child with disabilities, [D.H.] had the right to be free of discrimination [. . .] and despite that knowledge the [] District failed to ensure that improper verbal and physical

abuse would not be perpetrated upon [D.H. by the District]." (Doc. 1, ¶ 89). Plaintiffs emphasize that D.H.'s mother complained repeatedly to the District about Stolan's "cruel and abusive treatment" and allowed "the improper verbal and physical abuse to continue for a substantial period of time after the [] District was made aware of the situation," thus demonstrating deliberate indifference. (Doc. 1, ¶ 89). Further, Plaintiffs allege that the District knew or should have known that D.H.'s rights were likely to be violated by allowing D.H. to remain in a classroom with Stolan and her allegedly abusive teaching tactics. (Doc. 1, ¶¶ 89-96). These allegations are sufficient to provide that Defendants' denial of benefits to D.H. was directly related to his disability. Accordingly, Plaintiffs have stated claims for violations of the ADA and RA and have properly alleged deliberate indifference to support requests for damages. *See S.H.,* 729 F.3d at 261; (Doc. 1, ¶¶ 80-104). Defendants' motion to dismiss Counts IV and V of the complaint is therefore **DENIED**. (Doc. 1, ¶¶ 80-104; Doc. 7).

    C.    *MONELL LIABILITY*

    Defendants argue that Counts I and VI of the complaint,[4] which are brought under 42 U.S.C. § 1983, must be dismissed because those claims "fail to identify a policy or custom" and thus "fail to establish *Monell* liability." (Doc. 9, at 14). In Count VI, Plaintiffs allege a failure to supervise and train claim against the District. (Doc. 1, at 18-22, 31-33). Plaintiffs allege that the District "had and ha[s] unconstitutional customs, policies and practices of failing to investigate evidence of School District employees [sic] misconduct, abuse and or harassment[. . .] and failing to adequately supervise and train School District employees with

---

    [4] Because the Court dismissed Count I of the complaint for lack of subject-matter jurisdiction, the Court declines to address Defendants' secondary argument that Count I must be dismissed for failure to state a claim upon which relief may be granted due to a failure to establish *Monell* liability. The Court will address Defendants' arguments as they relate to Count VI.

regard to mandatory reporting obligations and maintaining, preserving and protecting students from violation of their right to personal security and bodily integrity." (Doc. 1, ¶ 61). Plaintiffs continue, "School District knew about Stolan's proclivity to engage in improper verbal and physical abuse of minor special education students. Nonetheless, no appropriate, effective, or adequate steps were taken". (Doc. 1, ¶ 108).

A § 1983 claim against a municipality may proceed in two ways: the plaintiff may allege that an unconstitutional municipal policy or custom led to his injuries or that his injuries were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019)). A plaintiff alleging an unconstitutional policy must point to "an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject." *Forrest*, 930 F.3d at 105. A plaintiff alleging an unconstitutional custom "must evince a given course of conduct so well-settled and permanent as to virtually constitute law." *Forrest*, 930 F.3d at 105 (citing *Estate of Roman*, 914 F.3d at 798). The plaintiff must also allege that the policy or custom was the proximate cause of his injuries by demonstrating an "affirmative link" between the policy or custom and the constitutional violation. *Estate of Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990))). A plaintiff alleging that his injuries were caused by a failure or inadequacy by the municipality must demonstrate "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest*, 930 F.3d at 106 (citing *Estate of Roman*, 914 F.3d

18

at 798; *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

"Generally, *Monell* claims are brought against employees or officials that are subordinate to the policymakers of a particular government entity. . . ." *Michalesko v. Freeland Borough,* 18 F.Supp.3d 609, 623 (M.D. Pa. 2014), *aff'd sub nom. Michalesko v. Borough*, 658 F. App'x 105 (3d Cir. 2016). Section 1983 creates no substantive rights, but rather allows a plaintiff to vindicate violations of rights created by the Constitution or federal law. *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Thus, to state a claim under § 1983, a plaintiff must show that the defendants, acting under color of state law, deprived him or her of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Kaucher, 455 F.3d at 423*. In this case, the School District is considered to be a municipality. *See B.W. v. Career Tech. Ctr. of Lackawanna Cty.*, 422 F.Supp.3d 859, 889 (M.D. Pa. 2019); *Highhouse v. Wayne Highlands Sch. Dist.*, 205 F.Supp.3d 639 (M.D. Pa. 2016).

It is well established that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002). Municipalities, such as the District, "are not liable under § 1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation." *B.W.*, 422 F.Supp.3d at 890; *see Monell*, 436 U.S. at 694. There must be a "direct causal link" between the municipal policy or custom and the alleged constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). "Proof of a single incident of unconstitutional activity is not

sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). "Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved." *Tuttle*, 471 U.S. at 823-24.

The plaintiff bears the burden of identifying the "policy" or "custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996). A court may find that a municipal policy exists when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). It is also possible for a court to find the existence of a municipal policy in "the isolated decision of an executive municipal policymaker." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 139 (1988). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (citations omitted). A plaintiff can show a custom by "evidence of knowledge and acquiescence," *Beck*, 89 F.3d at 971, and must "demonstrate that, through its deliberate conduct, [defendant school] was the 'moving force' behind [his alleged constitutional violation]." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).

Here, with respect to the first method of establishing municipal liability, the Court finds that the complaint does not sufficiently allege that a municipal policy or custom caused D.H.'s injuries. Plaintiffs fail to allege that District had a policy, regulation, and/or custom to improperly train and supervise its employees or that a Stolan was executing a District

policy, regulation, and/or custom when she allegedly violated D.H.'s rights. *See Monell*, 436 U.S. at 690. Nor do Plaintiffs allege that other individual Defendants acted pursuant to a policy, regulation, and/or custom of constitutional violations so well-settled as to constitute the "standard operating procedure" of the District. *Tucker v. Sch. Dist. of Phila.*, No. 19-CV-889, 2019 WL 3802066, at *4 (E.D. Pa. Aug. 13, 2019) (quoting *Bielevicz*, 915 F.2d at 850); *see Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). "Vague assertions of policy or custom" are insufficient to survive a motion to dismiss. *Buonconti v. City of Phila.*, 148 F.Supp.3d 425, 438 (E.D. Pa. 2015) (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995)); *see Tuttle*, 471 U.S. at 822. Thus, Plaintiffs' claims do not survive under this theory of *Monell* liability.

However, Plaintiffs meet their burden to establish a *Monell* claim by alleging that the District failed to train, supervise, and/or discipline its employees such that it was deliberately indifferent to students' rights. "[T]here are limited circumstances in which an allegation of 'failure to train' can be the basis for liability under § 1983." *Canton*, 489 U.S. at 387. "Where the policy 'concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact.'" *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter*, 181 F.3d at 357). A failure-to-train claim does not require a plaintiff to allege an unconstitutional policy. *See Estate of Roman*, 914 F.3d at 798. Instead, Plaintiff must just allege that "'the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation." *Thomas*, 749 F.3d at 222 (quoting *Canton*, 489 U.S. at 391).

21

Plaintiffs allege that the District and District officials "became aware that Stolan was using very vulgar and inappropriate language in the classroom, constantly engaging in inappropriate and unwanted contact and behavior with minor special education students, however, no proper inquiries were made, and no corrective action was taken." (Doc. 1, ¶ 109). They further allege that the District failed to take proper precautions to prevent the constitutional violations because it did not properly instruct its faculty and staff members on how to handle reported misconduct or abuse, like that of Stolan, which thus resulted in continued abuse. (Doc. 1, ¶¶ 109-113). The complaint also provides that the District was aware of Stolan's abusive tendencies, as both D.H.'s mother and Fulton reported Stolan's behavior to Gilroy and other District administrators. (Doc. 1, ¶¶ 23-41). Taken together, these allegations sufficiently support Plaintiffs' failure to train and supervise claim. Defendants' motion to dismiss Count VI is thus **DENIED**. (Doc.¶¶ 105-113; Doc. 7).

D.    S{.sc}TATE L{.sc}AW C{.sc}LAIMS IN C{.sc}OUNTS VII {.sc}THROUGH XI

Defendants argue that Plaintiffs' state law tort claims as asserted in Counts VII – XI are barred by the Pennsylvania Political Subdivision Tort Claims Act (the "PSTCA"), 42 Pa. C.S.A. § 8541. (Doc. 8, at 11-13). The PSTCA provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S.A. § 8541. There are certain limited exceptions set forth in 42 Pa. C.S.A. § 8542, which provide that local agencies and their employees are liable only for negligent acts falling into one of the following categories: (1) vehicle liability; (2) care, custody, or control of personal property; (3) care, custody, or control of real property; (4) dangerous conditions of trees, traffic controls, or street lights; (5) dangerous conditions of utility services facilities; (6) dangerous conditions of streets;

(7) dangerous conditions of sidewalks; (8) care, custody, or control of animals; and (9) sexual abuse. *See* Pa.C.S. § 8542.

"Municipal employees, including school district employees, are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment." *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (citing 42 Pa. C.S. § 8545). However, the statute provides that the employee will not be entitled to this immunity if "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct." *See* 42 Pa. C.S.A. § 8550. The Pennsylvania Supreme Court has recognized willful misconduct as requiring a demanding level of fault. *Sanford*, 456 F.3d at 315. "Willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.'" *Sanford*, 456 F.3d at 315 (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)). "[E]ven where a public employee acts with a degree of culpability equivalent to 'recklessness,' Pennsylvania law nevertheless affords him immunity." *Bright v. Westmoreland Cty.*, 443 F.3d 276, 287 (3d Cir. 2006) (finding that an allegation of deliberate indifference is not sufficient to avoid PSTCA immunity).

Arguing against dismissal of their state law claims, Plaintiffs, without citing any caselaw, contend that Defendants were deliberately indifferent to the violation of D.H.'s constitutional rights and thus the "State Law claims must remain as logically flowing from the Section 1983 Civil Rights Claim." (Doc. 9, at 13-14). However, as noted above, deliberate indifference is not sufficient to withstand PSTCA liability. *See Bright*, 443 F.3d at 287. If the

Court were to construe Plaintiffs' argument as an attempt to take advantage of the "willful misconduct" exception to PSTCA immunity, their argument would still fail, as "'[w]illful misconduct, however, does not provide an exception to the local agency's immunity.'" *B.D. by & through B.D. v. Cornwall Lebanon Sch. Dist.*, No. 1:20-CV-01944, 2021 WL 1253522, at *19 (M.D. Pa. Apr. 5, 2021) (citing *M.U. v. Downingtown High Sch. East*, 103 F.Supp.3d 612, 630 (E.D. Pa. 2015)) (emphasis added); *see also Palmer v. Bartosh*, 959 A.2d 508, 512 n.3 (Pa. Commw. Ct. 2008) (stating that "[t]he [PSTCA] waives governmental immunity only for certain negligent acts of the agency or its employees; where the employee's conduct is intentional in nature, the local agency retains its governmental immunity"). Therefore, finding Plaintiffs' arguments unpersuasive, the Court finds that the PSTCA bars their state law claims against the District. Accordingly, Defendants' motion to dismiss the state law claims of the complaint is **GRANTED** against the District and Counts VII – XI against the District are **DISMISSED with prejudice**. (Doc. 1; Doc. 7).

Regarding Plaintiffs' state law claims in Counts VII – XI against individual Defendants, to satisfy their burden, Plaintiffs must allege willful misconduct. *See Bright*, 443 F.3d at 287. Aside from Stolan, Plaintiffs fail to allege willful misconduct by other Individual Defendants in Counts VII or XI beyond mere deliberate indifference. *See Bright*, 443 F.3d at 287 (holding that deliberate indifference does not suffice as an allegation of willful misconduct for immunity purposes). However, in Counts VIII – X, Plaintiffs sufficiently allege that Stolan engaged in willful misconduct by alleging she acted in an abusive manner towards D.H. and that her actions were "extreme and outrageous," "exceeds the bounds of decency and tolerability in a civilized society," and were committed "willful[ly.]" (Doc. 1, ¶¶ 131, 134-139, 146). This considered, Counts VII and XI against are **DISMISSED** without prejudice against

24

all Individual Defendants aside from Stolan. (Doc. 1). Defendants' motion to dismiss Counts VIII – X against Stolan is **DENIED**. (Doc. 7).

    E.    QUALIFIED IMMUNITY AS APPLIED TO COUNT II

In Count II of their complaint, Plaintiffs allege that the District, Stolan, Gilroy, Genett, and Alli are liable to them for Fourteenth Amendment violations (Doc. 1, ¶¶ 70-76). Defendants assert that Count II must be dismissed against the individual because they are entitled to qualified immunity. (Doc. 8, at 6-7). Plaintiffs respond that qualified immunity does not apply because they have alleged that the Individual Defendants knew that their actions violated D.H.'s rights. (Doc. 9, at 9).

The doctrine of qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "It is the defendants' burden to establish that they are entitled to such immunity." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989)). As noted, Defendants mention that Individual Defendants are shielded by the doctrine of qualified immunity regarding Count II, but do not elaborate on the factual basis for this contention. (Doc. 8, at 6-7). Considering Defendants' assertion without sufficient factual support, the Court finds that at the pleading stage, it is premature to determine whether Individual Defendants are entitled to qualified immunity. *See Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (per curiam) ("it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."). Therefore, the Court declines to address Defendants'

claim of qualified immunity at this time and will **DENY** their motion to dismiss on this basis **without prejudice**. (Doc. 7).

F.    PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES

The Court will not dismiss Plaintiffs' claim for punitive damages at this time. Whether an award of punitive damages is warranted requires "a fact-intensive issue inappropriate for resolution at the motion to dismiss stage, where no factual record has yet been developed." *Miller v. Helm*, No. 17-CV-1590, 2017 WL 6405738, at *7 (M.D. Pa. Dec. 15, 2017). Indeed, "this Court has consistently held that it is premature to dismiss demands for punitive damages prior to discovery." *Campbell v. Balon*, No. 16-CV-779, 2017 WL 2880856, at *19 (M.D. Pa. July 6, 2017); *Bobrick Washroom Equip., Inc. v. Scranton Prods.*, Inc., No. 14-CV-853, 2017 WL 2126320, at *11 n.15 (M.D. Pa. May 16, 2017). Here, Plaintiffs do not seem to contest that punitive damages cannot be alleged against the District and Individual Defendants in their official capacities. (Doc. 9, at 14). Instead, Plaintiffs state that they seek punitive damages against Individual Defendants in their individual capacities. (Doc. 9, at 14). Thus, at this preliminary stage of litigation, dismissal of Plaintiffs' request for punitive damages against Individual Defendants in their individual capacities is not appropriate. (Doc. 7).

G.    LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000)). In

this case, the Court will grant Plaintiff leave to file an amended complaint in an attempt to cure the deficiencies outlined herein as they relate to the claims dismissed without prejudice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Grayson*, 293 F.3d at 108.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. (Doc. 7). Counts I and III are **DISMISSED without prejudice**. Counts VII – XI as asserted against the District are **DISMISSED with prejudice**. Counts VII and XI as asserted against Gilroy, Lalli, and Genett are **DISMISSED without prejudice**. Count XIII is **DISMISSED with prejudice**. Defendants' motion to dismiss all other claims is **DENIED**. (Doc. 7).

An appropriate Order follows.

BY THE COURT:

Dated: March 31, 2025                    *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**